**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:  SEAN M. JOHNSON and
        SARAH E. SPECHT,

                                                Chapter 13
                                                Case No. 10-26741 (CMG)

             Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPINION

**APPEARANCES:**

**JONATHAN STONE, Esq.**
Attorney for Debtors

**COURTER, KOBERT & COHEN**
**John J. Abromitis, Esq.**
Attorneys for Panther Valley Property Owners Association, Creditor

**Albert Russo, Esq.**
Standing Chapter 13 Trustee

**CHRISTINE M. GRAVELLE, U.S.B.J.**

### Introduction

This matter comes before the Court by way of Creditor, Panther Valley Property Owners Association ("PVPOA") objection to confirmation of the First Modified Chapter 13 Plan (the "Modified Plan") of Sean M. Johnson and Sarah E. Specht (together, "Debtors"). PVPOA raises a number of issues in its objection, alleging that homeowner association fees are not dischargeable and that Debtors may not surrender their home in full satisfaction of its claim. Debtors cite 11 U.S.C. § 1325(a)(5)(A) as their basis for confirmation because PVPOA's objection was not

1

specific or timely. For the reasons stated below, this Court denies confirmation of the Modified Plan holding that 11 U.S.C. § 1325(a)(5)(A) cannot serve as grounds for confirmation when a secured creditor registers a timely notice of its lack of acceptance of the plan.[1]

## Jurisdiction and Venue

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein are 11 U.S.C. § 1322 and 11 U.S.C. § 1325. Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

## Facts and Procedural History

When Debtors filed for Chapter 13 bankruptcy protection on May 29, 2010, they lived at 13 Meadowlark Road, Hackettstown, NJ (the "Property"), which is part of the PVPOA. Debtors became members of the PVPOA when they purchased the Property. Article V, Section 1 of the PVPOA bylaws, entitled, "Creation of the Lien and Personal Obligations of Assessments" states:

> "[t]he Annual and Special Assessments, as hereinafter defined, together with such interest thereon and costs of collection thereof as hereinafter provided, shall be a charge upon and shall constitute a continuing lien upon the land or other real property against which each Assessment is made."

---

[1] The parties submitted extensive briefing as to the dischargeability of homeowner association fees. However, because Debtors rely solely on § 1325(a)(5)(A) as their basis for confirmation, claiming that PVPOA accepted the Modified Plan because its objection was insufficient, the Court restricts its analysis to that argument. Because the Court finds lack of acceptance by PVPOA, analysis of nondischargeability of the debt is moot.

In addition to PVPOA maintenance assessments and association fees, the Property is subject to a mortgage held by BAC Home Loan Services ("BAC"). Debtors' schedules valued the Property at $219,000.00 and listed BAC as a creditor holding a secured claim of $259,387.00. Debtors failed to list PVPOA.[2] Five months after the filing, the Court confirmed Debtors' plan (the "Original Plan"), which surrendered the Property to BAC in full satisfaction of its mortgage. According to Debtors, they moved out of the Property sometime in December 2011.

Nearly two years later, PVPOA filed a complaint in the Superior Court of New Jersey, Warren County, demanding a monetary judgment of $4,962.00 plus interest, costs and fees, for unpaid assessments.[3] Debtors answered, stating that they "had no choice but to file bankruptcy and vacate the [P]roperty," and that "Bank of America has [their] keys."[4]

The record does not contain any information as to whether PVPOA withdrew its complaint against Debtors as a result of being informed of their bankruptcy filing. However, on March 6, 2013, PVPOA filed a Motion for Relief from Stay. That motion alleged that Debtors owed post-petition fees to the Association, and set the amount due as of February 28, 2013 at $5,864.00. Debtors did not contest the motion, and this Court granted stay relief "to institute or resume and prosecute to conclusion . . . in the court(s) of appropriate jurisdiction . . . the movant's rights in . . . [the Property]."

According to Debtors, PVPOA subsequently instituted a second complaint against them in the Superior Court of New Jersey, Warren County, sometime in October 2013. In response, Debtors filed the Modified Plan, which treated the PVPOA claim as follows:

---

[2] PVPOA did not learn of the bankruptcy until at least 2.5 years later.
[3] At oral argument, PVPOA stated that the amount demanded consisted of post-petition fees and assessments.
[4] Bank of America is presumably related to BAC Home Loans Services, though the exact relationship is not identified in the record.

3

> Pursuant to 11 U.S.C. 1322(b)(8) and (9), title to [the Property] shall vest in [PVPOA] upon confirmation, and the Confirmation Order shall constitute a deed of conveyance of the property when recorded at the Warren County Superior Court. All secured claims secured by the debtors' property will be paid by surrender of the collateral and foreclosure of the security interest in full satisfaction of the lien.

The Modified Plan listed the claim of BAC on the Property as surrendered and stated that "prior orders in the case shall remain the same." The Court scheduled confirmation for November 13, 2014.

PVPOA filed a timely written objection to confirmation of the Modified Plan, challenging the Debtors' abandonment of the Property in December 2011, claiming Debtors could not avoid payment of post-petition homeowner association fees "that are very clearly expected in the Bankruptcy Code," and stating that Debtors were not paying all of their excess income into the Plan. Debtors responded with a document titled "Debtor's Declaration of Time of Abandonment and Amount Paid for Rent" in support of confirmation and in reply to the PVPOA objection, certifying the date they moved out of the Property and the amount of their rental payment.

At oral argument, PVPOA additionally claimed that Debtors could not surrender the Property to PVPOA. Debtors' counsel argued that the written objection did not address the proposed surrender, and therefore no argument on that issue should be allowed. The Court requested further briefing addressing the timing of the objection, the issue of surrender, and the dischargeability of PVPOA's claim.[5] After those briefs were submitted, the Court again heard

---

[5] At oral argument, the Court asked the parties to consider two cases that held collateral could not be surrendered to a secured creditor absent the creditor's acceptance of the surrender unless possible deficiency claims were addressed. See In re Armstrong, 434 B.R. 120 (S.D.N.Y. 2010); In re Sneijder, 407 B.R. 46 (S.D.N.Y. 2009). In

4

oral argument on the matter, reserving its decision.

Between their appearances in this Court, Debtors filed an adversary complaint against PVPOA, PVPOA's president, and PVPOA's attorneys, seeking damages for willful violations of the automatic stay. The complaint alleges relief from stay was granted only to allow PVPOA to proceed against the Property *in rem*, and that the named defendants violated the stay by proceeding with a collection action against the Debtors *in personam*. Additionally, the docket reflects an application to retain Debtors' counsel as attorney in a Federal District Court case which apparently is for the purpose of prosecuting a Fair Debt Collection Practices Act violation against PVPOA.

Thereafter, Debtors filed a Motion to Supplement the Record for the limited purpose of correcting what Debtors claimed was an inaccurate statement of fact by PVPOA's counsel at the hearing. Debtors alleged that counsel for PVPOA made the "emphatic" statement that PVPOA had an unsecured claim, which Debtors argue is untrue, based on the PVPOA bylaws. PVPOA's response to the motion included a brief that cited conflicting case law as to whether homeowner's associations held secured or unsecured claims, provided further analysis of its position as to non-dischargeability, and argued the inequities of its treatment under the Modified Plan. Debtors' counsel submitted a response in kind, and the parties again appeared for oral argument on February 19, 2014, at which point the Court granted Debtors' Motion to Supplement the Record and accepted the additional briefs from both parties.

## **Legal Analysis**

I.   <u>Secured Status of the PVPOA Claim</u>

---

responsive both parties took the position that creditor consent is required to effectuate surrender. Therefore, the Court takes no position on the meaning of surrender under § 1325(a)(5)(C) or on whether a previously surrendered property can be surrendered a second time to a different creditor. These remain interesting issues, but their consideration by this Court will be left for another day.

Initially, the Court must determine whether the PVPOA claim is secured or unsecured as the treatment of classes of debt is an important part of the confirmation analysis. A security interest is defined in the Bankruptcy Code as a "lien created by an agreement." 11 U.S.C. § 101(51). Debtors' submit that the claim is secured, as the language of Article V, Section 1 of the PVPOA bylaws provides PVPOA with a continuing lien upon the Property.

PVPOA has not taken a position as to whether its claim is secured or unsecured. According to PVPOA, the secured status is irrelevant, as the plan cannot be confirmed in its present form regardless. They submit that there is a split in authorities as to this issue, citing to four cases, two from this district, to illustrate this perceived split.[6]

This Court will not spend any significant time addressing the line of cases put forward by PVPOA. Those cases involve condominium associations, which are controlled by state law. PVPOA's counsel stated in oral argument that the New Jersey Condominium Act, N.J.S.A. 46:8B-1 *et seq.*, does not apply to this matter, as PVPOA is a homeowners association, and therefore is not the type of association contemplated by that act. See N.J.S.A. 46:8B-3(b).[7] Therefore, the Court turns to an analysis of the nature and rights of a homeowners association.

Homeowners' associations are created in New Jersey through a declaration of covenants, conditions, and restrictions contained in deeds and association bylaws. See Highland Lakes Country Club & Community Association v. Franzino, 186 N.J. 99, 110 (2006), *citing* E. Richard Kennedy & Mark D. Imbriani, The Rights of Tenants in Condominium and Homeowner

---

[6] Those cases are as follows: In re Green, 495 B.R. 231 (Bankr. E.D. Louisiana 2013); In re Tarragon Corporation, 2012 WL 863635 (Bankr. D.N.J. 2012); In re Robinson, 231 B.R. 30 (Bankr. D.N.J. 1997); In re Young, 477 B.R. 594 (W.D. Pa. 2012). While they may be instructive as to whether debtors are liable for post-petition homeowner association fees if they continue to occupy the property, they are not helpful in determining the secured or unsecured status of a claimant.

[7] "'Association' means the entity responsible for the *administration of a condominium*, which entity may be incorporated or unincorporated." (emphasis added)

6

Association Communities, 174 N.J. Law. 18, 18 (1996). Homeowners' associations may record these governing documents under N.J.S.A. 46:26A-2,[8] as those documents affect title to real estate. See Highland Lakes, *supra,* 186 N.J. at 111. Once recorded, the recordation serves as notice to subsequent judgment creditors and purchasers. See N.J.S.A. 46:26A-12.[9] These recorded covenants create a lien on the property. See Highland Lakes, *supra*, 186 N.J. at 111, *citing* Leisuretowne Ass'n, Inc. v. McCarthy, 193 N.J. Super. 494, 501 (App. Div. 1984).

There are three types of special rights encumbering or chargeable to property: common law liens, equitable liens, and statutory liens. Id., *citing* J.T Evans Co. v. Fanelli, 59 N.J. Super 19, 22 (Law Div. 1959). Homeowners' association liens are classified as equitable liens because they are created by the covenants contained in members' deeds. Id., *citing* First Fed. Sav. & Loan Ass'n v. Bailey, 316 S.C. 350 (S.C.Ct. App. 1994). "For an equitable lien to arise there must be a debt owing from one person to another, specific property to which the debt might attach, and an intent, expressed or implied, that the property will serve as a security for the payment of the debt." Id. at 111-112, *quoting* First Fed. Sav. & Loan v. Bailey.

The record is silent as to whether the deed transferring the Property contained a declaration of covenants, or whether the PVPOA bylaws were recorded. But PVPOA attached its bylaws as an exhibit to the certification in support of its previous Motion for Relief from Stay.[10] The exhibit indicates that the bylaws were recorded in "Vol. 1295," although no recording date is visible. The page numbers appear to range from 80 to 122. There is a declaration of covenants in the bylaws. Assuming the bylaws were recorded, PVPOA has a lien on the Property and is a secured creditor.

---

[8] Cited as N.J.S.A. 46:16-1 and -2 in Highland Lakes. Those statutes were repealed effective May 1, 2012, and replaced by the referenced statutes.
[9] Cited as N.J.S.A. 46:21-1 in Highland Lakes. That statute was repealed effective May 1, 2012, and replaced by the referenced statute.
[10] Docket Number 27

7

While the Court is hesitant to assume a fact not in the record, it will assume, for purposes of this decision, that PVPOA holds a secured claim. The assumption is made for the simple reason that, if PVPOA's claim were unsecured, surrender pursuant to § 1325(a)(5)(C) would not apply. Further, in their Memorandum of Law in Support of Motion to Supplement the Record the Debtors admit their inability to "vest real property back to PVPOA, because one cannot vest an unsecured interest."[11]

## II. Treatment of PVPOA's Secured Claim in the Modified Plan

Because PVPOA's claim is secured, 11 U.S.C. § 1325(a)(5) of the Code dictates its treatment in a confirmable plan. That section provides three alternatives for treatment of a secured claim. If the secured creditor accepts the plan, it may be confirmed under § 1325(a)(5)(A). If the secured creditor does not accept its treatment under the plan, then the debtor must either provide for retention of the lien securing the claim until it is paid in full or is discharged, or surrender the property securing the claim to the creditor. See 11 USC § 1325(a)(5)(B) and (C).[12]

The Modified Plan surrenders the Property pursuant to § 1325(a)(5)(C) in full satisfaction of PVPOA's claims. Debtors take the position that surrendering the collateral in full satisfaction of PVPOA's claim pursuant to § 1325(a)(5)(C) is workable only if PPVOA accepted the surrender.[13] Debtors seek confirmation of the Modified Plan pursuant to § 1325(a)(5)(A), claiming that PVPOA accepted the Modified Plan by failing to file a written objection that directly addressed the proposed treatment of the Property in relation to the PVPOA claim. According to

---

[11] See Docket No. 53.
[12] The Modified Plan does not address § 1325(a)(5)(B) and it is not addressed herein.
[13] See Debtor's Memorandum of Law in Support of Modified Plan at Docket No. 46.

8

Debtors, PVPOA's timely written objection, highlighting only the need for an increase in plan payments, alleging a requirement that post-petition homeowner association fees be paid, and questioning Debtors actual abandonment of the Property, was not enough to demonstrate PVPOA's lack of acceptance of the Modified Plan.   This Court disagrees, and denies confirmation under § 1325(a)(5)(A) based on PVPOA's lack of acceptance.[14]

Because PVPOA filed a timely written objection and appeared at oral argument to prosecute its objection, this case is distinguishable from the circuit court cases cited by Debtors. It is also distinguishable from the two bankruptcy court cases on which the Debtors heavily rely. See In re Wolf, 162 B.R. 98 (Bankr. D.N.J. 1993); In re MacDonald, 222 B.R. 69 (Bankr. E.D. Pa. 1998).

The Third Circuit held that a secured creditor's failure to object to a Chapter 13 plan constitutes acceptance under § 1325(a)(5)(A).   See In re Szostek, 886 F.2d 1405, 1413 (3d Cir. 1989).   In Szostek,, the creditor failed to file an objection to confirmation until three days after the confirmation of the plan.   When the creditor learned that the plan had been confirmed, the court noted that its attorney took no action to challenge the confirmation, nor did he subsequently file an appeal.   The Szostek court found that because the creditor had not filed a timely objection, he had satisfied 11 U.S.C. § 1325(a)(5) by accepting the plan.   See id.

Other circuits also subscribe to the Szostek holding.   See, e.g.,   In re Jones, 530 F.3d 1284, 1291 (10th Cir. 2008) (failure of secured creditor to object to confirmation binds it to confirmed plan's treatment of secured claim); In re Flynn, 402 B.R. 437, 444 (B.A.P. 1st Cir. 2009) (adopting Third Circuit's view that acceptance may occur upon a secured creditor's failure to file

---

[14]   Again, because Debtor fails to argue that the plan is confirmable under § 1325(a)(5)(C), relying solely on § 1325(a)(5)(A), the Court will not address Debtor's ability to surrender.

timely objection to chapter 13 plan); In re Andrews, 49 F.3d 1404, 1409 (9th Cir. 1995) (trustee has no standing to prosecute § 1325(a)(5) objection; absence of secured creditor objection deemed to satisfy (A) requirement of acceptance).

In MacDonald, an unsecured creditor filed a timely written objection pursuant to § 1325(b)(1)(B) claiming debtors were not paying all of their disposable income into the plan, alleging debtors should not be allowed to decrease their disposable income by paying private school tuition or repaying loans to their retirement plans.  The trustee did not file a written objection.  The creditor appeared at the hearing to prosecute its objection and was joined by the trustee, who agreed that some, but not all of the expenses questioned by the creditor should be challenged.  At the close of the confirmation hearing the court directed the creditor, the debtors, and the trustee to submit briefs on the § 1325(b)(1)(B) issues raised by the creditor.

In post hearing briefs, the creditor and the trustee challenged additional expenses claimed by debtors.  The MacDonald Court expressed frustration that the briefs submitted attempted to raise new issues and present new evidence not raised in the original objection, noting that the writing requirement for an objection must be strictly enforced in the context of 11 U.S.C. § 1325(b)(1)(B).  See In re MacDonald, 222 B.R. at 74; E.D. Pa. L.B.R. 3020.1   Therefore, it refused to consider objections that were not timely filed in writing, including those new issues raised by the trustee and the creditor in their post-hearing briefs.  MacDonald, 222 B.R. at 74. The court reasoned that, "[i]t is difficult or impossible for a debtor to come to a confirmation hearing prepared to meet this burden if the debtor is unaware of precisely what objections are before the court."  Id.

An objection by an unsecured creditor pursuant to § 1325(b)(1)(B) like the one raised in In

10

re MacDonald, which can also be made by the trustee, necessarily involves a detailed analysis of the factors that constitute a debtor's income and expenses.   The nature of the objection requires that the objector specify which income or expense calculations are in question.   The MacDonald Court's refusal to consider new objections to different expenses made after the confirmation hearing put a practical end to a discussion of allowed expenses that could continue interminably.

An objection by a secured creditor under §1325(a)(5) must be distinguished from an objection by an unsecured creditor under §1322(b)(1)(B).   The former is a general objection to that creditor's treatment under the plan.    Far fewer facts are in play.   A chapter 13 plan proposes a single treatment of a secured claim.   A secured creditor may either accept or reject that treatment.   Any objection by a secured creditor registers its lack of acceptance and §1325(a)(5)(A) cannot be used as grounds for confirmation.   If the secured creditor rejects the plan, the debtor can choose one of the options set forth in § 1325(a)(5)(B) or (C).   Here, because debtors seek confirmation only under § 1325(a)(5)(A), and PVPOA registered its dissatisfaction with the Modified Plan, confirmation must be denied.

In Wolf, a secured creditor filed an objection to confirmation of a plan that proposed a cramdown of its claim pursuant to § 1322(b)(2).   The objection stated that if certain conditions were met, the creditor would not appear at the confirmation hearing, and the objection should be deemed waived.   See In re Wolf, 162 B.R. at 102.   The creditor did not appear at the confirmation hearing, the objection was not considered, and the plan was confirmed.   The creditor did not appeal but, six months after confirmation, filed an adversary proceeding challenging its treatment under the confirmed plan and seeking modification.   The Wolf Court referred to the wording of the objection deeming the objection waived if the creditor did not appear at the hearing.

11

See In re Wolf, 162 B.R. at 104.   It found that even if the objection could have been construed as an objection to cramdown the creditor needed to appear at the hearing to prosecute its objection. Id.   Finding that the creditor had ample notice of its treatment under the plan and of the confirmation hearing, the Wolf Court held any party wishing to object to confirmation must appear at the hearing or its objection would be deemed waived or abandoned. Id.

Here, it is uncontested that PVPOA filed a timely written objection expressing its dissatisfaction with its treatment under the Modified Plan and appeared at the confirmation hearing.   Both parties were given a full opportunity to discuss their positions on the Modified Plan through post hearing submissions and additional oral argument.   These facts distinguish this case from Wolf.

There is no Code requirement that a secured creditor take affirmative action to register its acceptance of a plan.   See 11 U.S.C. § 1325(a)(5).   Nor does the Code impose a method by which a secured creditor must make its lack of acceptance of a plan known.   Case law tells us only that a secured creditor's failure to object to confirmation of a chapter 13 plan may constitute acceptance. This Court finds no authority for the proposition that a secured creditor must clearly state the grounds for its objection to a plan before it will be considered to have rejected it.   An objection, timely filed and properly prosecuted, prevents confirmation under § 1325(a)(5)(A).   Any objection to a Chapter 13 plan filed by a secured creditor, even if it sets forth no reason, is proof of lack of acceptance of plan provisions.

The PVPOA objection very clearly does not accept the Modified Plan.   The last sentence of the objection states, "[f]or these reasons, the modified plan should be denied."   By focusing on the reasons for rejection of the plan, rather than the fact of rejection, Debtors have constructed a

12

compelling argument based on accusations of a "hearing by ambush," and avoided the crucial fact of the objection itself. Quite simply, regardless of the contents of the objection, the actual filing and appearance at oral argument by PPVOA is the determinative factor in this Court's analysis.

## Conclusion

For the reasons set forth above the Court DENIES confirmation of Debtors' Modified Chapter 13 Plan. An appropriate order will be entered by the Court.

Dated: June 16, 2014                    **/S/Christine M. Gravelle**
                                        United States Bankruptcy Judge